**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-50134-001-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Heather Carr, | |
| Defendant. | |

Pending before the Court is Defendant's *pro se* motion for early termination of supervised release. (Doc. 2.) The government opposes the motion. (Doc. 5.) For the following reasons, the motion is denied.

## BACKGROUND

In February 2016, Defendant was charged with various fraud-related offenses in the District of Colorado. (Doc. 1-1 [indictment].) As summarized in the government's response brief, "[Defendant] and her co-defendants stole the identities of over 150 inmates during a two-year campaign to defraud the Department of Education out of $1.3 million in federal student aid. As 'the key player in this conspiracy,' [Defendant] used her position as a Wells Fargo loan underwriter to gain access to the victims' social security numbers and other personal identifying information. She then crafted hundreds of fake student profiles and filed hundreds of federal aid applications in the inmates' names, pocketing hundreds of thousands of dollars in spoils. In total, [Defendant] and her cohorts bagged $418,672.05 and induced disbursement of $562,487.85 in federal student aid." (Doc. 5 at

2, cleaned up.)

In January 2018, after pleading guilty, Defendant was sentenced to 57 months' imprisonment, to be followed by a three-year term of supervised release. (Doc. 1-2 [judgment].) Defendant was also ordered to pay $562,487.85 in restitution. (*Id.* at 6-8.)

In January 2022, Defendant was released from custody and began her term of supervised release. (Doc. 2 at 1.)

In June 2022, supervision was transferred from the District of Colorado to the District of Arizona. (Doc. 1.)

On December 29, 2023, Defendant filed the pending motion for early termination. (Doc. 2.) After citing various guidance materials on when requests for early termination should be granted (*id.* at 3-5), Defendant argues that her request should be granted because she was a "model inmate" while incarcerated and pursued various educational and rehabilitative programs; she has complied with all supervision terms since her release and has "made progressive strides towards payment of her restitution obligation and will continue to do so even after supervision is completed"; she has no history of drug abuse and no need for ongoing counseling or treatment; and she has maintained steady employment since her release. (*Id.* at 6-7.) Defendant also contends that she was recently offered a job promotion but was unable to accept it due to her supervised release-related travel restrictions. (*Id.* at 7.)[1]

On January 22, 2024, the government filed an opposition to Defendant's request. (Doc. 5.) The upshot is that the government "opposes [Defendant's] Motion for two reasons. First, [Defendant's] District of Arizona probation officer . . . told undersigned counsel that [Defendant] has never asked her for permission to travel out of the district, a request the officer said she would likely have granted with ten days' notice. Nor has [Defendant] requested to modify the standard conditions of her supervised release to lift the travel restriction. Second, and more importantly, [Defendant] still owes over $530,000

---

[1] Defendant also makes various arguments about misapplied First Step Act credits (*id.* at 8-9), but those arguments are not properly raised via a motion for early termination.

in restitution." (*Id.* at 1-2, footnote omitted.) The government also argues that, as recognized in *United States v. Oak*, 398 F. App'x 274 (9th Cir. 2010), "[a] large sum of unpaid restitution can weigh against early termination." (*Id.* at 3.)

On February 20, 2024, the Probation Office provided a memorandum to the Court regarding Defendant's early termination request. In a nutshell, the memorandum (which is not available on the docket) states that "the Probation Officer was able to complete a financial investigation and found that [Defendant] remained in compliance with the conditions imposed by the Court" and concludes that "it appears supervised release is no longer necessary as the offender presents no identifiable risk to the public, has complied with the rules and regulations of supervised release, and meets the criteria for early termination by the Committee on Criminal Law."

**DISCUSSION**

Defendant's request for early termination is governed by 18 U.S.C. § 3583(e)(1), which provides that a court "may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *See generally United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) ("The correct legal standard for deciding a motion to terminate supervised release is set forth in 18 U.S.C. § 3583(e). The statute provides that, after considering a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a), a court may terminate a term of supervised release 'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.' The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.") (citations omitted).

Although Defendant's conduct has been exemplary since her conviction, and she is to be commended for that performance, positive performance is only part of the equation.

The Court also must consider certain § 3553 factors, including "the need to provide restitution to any victims of the offense" per § 3553(a)(7), and the "interest of justice." The Court agrees with the government that, in light of the outstanding restitution balance of more than $500,000, the interest of justice and § 3553(a)(7) would not be served by early termination. *Oak*, 398 F. App'x at 274-75 ("Oak also contends that the district court abused its discretion by refusing to grant an early termination of his supervised release pursuant to 18 U.S.C. § 3583(e)(1). The district court properly based its decision upon the finding that Oak still owes more than $200,000 in restitution."). Finally, although the Court does not wish to do anything that might interfere with Defendant's efforts to obtain a job promotion, it appears that Defendant's concerns could be addressed through targeted modifications of her current terms of supervised release (such as modifications to her travel restrictions). There is no need to eliminate the entire supervisory framework to achieve those modifications.

Accordingly, **IT IS ORDERED** that Defendant's motion for early termination of supervised release (Doc. 2) is **denied**.

Dated this 1st day of March, 2024.

Dominic W. Lanza
United States District Judge